IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

UNITED STATES OF AMERICA
ex. rel. Melissa Rushing                                                                                                     PLAINTIFF

V.                                                  CIVIL ACTION NO. 1:20-CV-210-SA-DAS

CHRISTOPHER PAUL LICK, et al.                                        DEFENDANTS

ORDER AND MEMORANDUM OPINION

On October 20, 2020, Melissa Rushing initiated this action by filing her Qui Tam Complaint [3] against Christopher Paul Lick; GTR Holdings, LLC; Grassroots a Natural Company, LLC; Aspen River Candle Company, LLC; and Aspen Lake Online LLC. Currently before the Court is a Motion for Disbursement of Funds [38]. Having reviewed the docket, as well as the available authorities, the Court is prepared to rule.

*Relevant Background*

Melissa Rushing is a former member of Grassroots a Natural Company, LLC. Christopher Paul Lick is—or at least was at the commencement of this action—"the Manager of GTR Holdings LLC; the Manager, Member and President of Grassroots a Natural Company LLC; the organizer of Aspen River Candle Company, LLC; and the Manager of Aspen Lake Online LLC." [3] at p. 2.

In the Qui Tam Complaint [3], Rushing explains the CARES Act's Paycheck Protection Program ("PPP") and ultimately alleges that the Defendant entities, through Lick, fraudulently obtained millions of dollars through the Program. In particular, Rushing alleges:

> The Defendants submitted false claims for loans to be guaranteed by the Small Business Administration pursuant to the Paycheck Protection Program § 1102 (PPP) of the CARES Act. Specifically, the Defendants misrepresented the payroll costs which were eligible to be used in calculating the maximum loan amount for which each entity was eligible. This misrepresentation caused each entity to receive loan proceeds well in excess of what it would be entitled.

> Additionally, Defendant Lick knowingly used the funds for unauthorized purposes which should subject him [to] personal liability as well as the individual entities.

[3] at p. 6.

The Qui Tam Complaint [3] also identifies specific assets that Lick allegedly purchased with the fraudulently obtained funds.

On May 7, 2021, Lick was indicted. *See* N.D. Miss. Cause No. 1:21-CR-21-GHD-DAS at [1]. Lick was charged with wire fraud, making false statements, and money laundering in connection with PPP funds. He ultimately pled guilty to one count of wire fraud. In addition to imposing a term of imprisonment of 78 months, the Court ordered that Lick pay restitution in the amount of $6,050,463.00, as well as ordering forfeiture of numerous checking accounts, an investment account, a vehicle, and certain real property. The criminal judgment was entered on August 15, 2022. In the present proceeding, the Government represents that "[t]he assets forfeited in the criminal proceeding, with the exception of the real property generally identified as 982 South Ridge Road, Starkville, MS, have been liquidated by the United States Marshals Service. The total net proceeds from the liquidation of Lick's assets is $1,391,108.74." [39] at p. 2.

On November 15, 2022, the Government intervened in this qui tam action. The Government filed its Intervenor Complaint [21] on December 12, 2022. The Government completed service of process on all Defendants on January 10, 2023. *See* [24], [25], [26], [27], [28]. After the Defendants failed to timely respond, the Clerk of Court entered a default and later default judgment against some of the Defendants. Judgment was entered against Lick and GTR Holdings, LLC in the amount of "$6,385,605.30, plus interest on the judgment at the legal rate until the judgment is satisfied, plus a filing fee of $402.00" and against Lick and Aspen Lake

Online LLC in the amount of "$5,780,265.24, plus interest on the judgment at the legal rate until the judgment is satisfied, plus a filing fee of $402.00." [33] at p. 1; [34] at p. 1.

On June 26, 2023, the Government and Rushing entered into an agreement with respect to the award owed to Rushing under the False Claims Act. That agreement contemplates payment to Rushing in the amount of 15% of all money collected. Through the present Motion [38], the parties jointly seek an Order directing the United States Marshals Service to transfer 15% of the net proceeds of the criminal forfeiture to Rushing.[1]

*Analysis and Discussion*

The False Claims Act "makes liable any person who presents the Government with false or fraudulent claims for payment or approval." *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 160 (5th Cir. 2014) (citing 31 U.S.C. § 3729). In addition to authorizing the Attorney General to pursue a civil action, the statute also contains a qui tam provision which authorizes a person to "bring a civil action for a violation of section 3729 for the person and for the United States Government." *Id*. (quoting 31 U.S.C. § 3730(b)).

If the Government intervenes and proceeds with an action brought pursuant to the qui tam provision, the relator "shall, subject to [certain exceptions], receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). Of particular importance in the case *sub judice*, the statute also contains an alternate remedy provision, which provides:

> Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in

---

[1] The Government actually filed the Motion [38] and supporting Memorandum [39]. Rushing filed a Joinder [40] the same day.

> another proceeding, the person initiating the action shall have the same right in such proceeding as such person would have had if the action had continued under this section. Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this section. For purposes of the preceding sentence, a finding or conclusion is final if it has been finally determined on appeal to the appropriate court of the United States, if all time for filing such an appeal with respect to the finding or conclusion has expired, or if the finding or conclusion is not subject to judicial review.

31 U.S.C. § 3730(c)(5).

The question before the Court is a narrow one—whether the alternate remedy provision applies to a criminal forfeiture. More specifically, the Court must determine whether a relator (Rushing) may recover a portion of a criminal forfeiture order in a separate criminal case against the defendant.

Although not directly on point, the Court begins with the Fifth Circuit's decision in *Sharma*. 746 F.3d 157. There, Samuel Babalola and Kayode Samuel Adetunmbi ("the relators") worked as medical assistants for Dr. Arun Sharma and Dr. Kiran Sharma at the Sharmas' medical clinics. *Id*. at 159. During their employment, the relators observed the Sharmas submitting fraudulent claims to Medicare, Medicaid, and private insurers. *Id*. The relators drafted an anonymous letter explaining the ongoing fraud and sent the letter to various governmental agencies. *Id*. A criminal investigation ensued, and two years later the Sharmas were indicted. *Id*. During the investigation, the Government contacted the relators, who met with the FBI, DEA, and the United States Attorney's Office. *Id*. The relators agreed to testify against the Sharmas. *Id*. However, the Sharmas ultimately pled guilty, and the district court ordered that they pay over $43 million in restitution. *Id*.

The Sharmas appealed. *Id*. While the criminal case was on appeal, the relators filed a qui tam action pursuant to the False Claims Act. *Id*. The relators sought to utilize the Act's alternate

remedy provision to obtain a portion of the criminal restitution. *Id*. at 160. The district court held that the relators were not entitled to share in the criminal restitution pursuant to the alternate remedy provision, specifically concluding that "because there was no valid [False Claims Act] complaint in existence *at the time the restitution was awarded to the Government*, the criminal proceeding did not constitute an 'alternate remedy' under 31 U.S.C. § 3730(c)(5)." *Id*. (emphasis added).

The relators filed an interlocutory appeal. *Id*. On appeal, the specific issue was whether the district court correctly held that the qui tam proceeding must have been in existence at the time of the Government's election of an alternate remedy (in this case, criminal restitution) in order for the relator to recover via the alternate remedy provision. *Id*. at 162. The Fifth Circuit ultimately affirmed the district court's ruling, specifically holding that "[w]e agree with the district court's reasoning that for a remedy to be 'alternate' to the qui tam proceeding, there must have been two proceedings from which to choose. Accordingly, we hold that the qui tam proceeding must have been in existence at the time of the Government's election of the alternate remedy." *Id*.

In a concurring opinion, Judge Dennis noted the inequity in the court's decision:

> Here, Babalola and Adetunmbi provided the government with evidence that their employers, two Texas doctors, had a long-running scheme of defrauding Medicaid and Medicare and had cost the government and private insurers tens of millions of dollars. Babalola and Adetunmbi could have withheld their information and allowed the fraud to continue while they searched for an attorney to represent their interests in a qui tam suit. But they did not—they took the path of the Good Samaritan and without delay provided the government with the evidence needed to pursue the defrauders. Using Babalola and Adetunmbi's information, the government prosecuted the doctors for criminal fraud and obtained restitution and forfeiture orders from the court requiring the doctors to make recompense for millions of dollars in losses. In addition to revealing the fraud to the government, Babalola and Adetunmbi further assisted the government's pursuit of recompense by agreeing to serve as witnesses at trial and testify in support of the government's

5

> case. For all their efforts, Babalola and Adetunmbi received *nothing*. *Had Babalola and Adetunmbi first filed their qui tam suit before providing their information to the government, then they would have been entitled, under § 3730(d)(1), to an award of between fifteen to thirty percent of the government's proceeds*. Did Congress really intend that, merely because Babalola and Adetunmbi lost to the government in the race to the courthouse, their substantial assistance is no longer worth fifteen to thirty percent, but *zero*?

*Id*. at 166 (Dennis, J., concurring) (some emphasis in original; some emphasis added).

In the case at bar, unlike the relators in *Sharma*, Rushing filed her Qui Tam Complaint [3] *prior to* the Government's decision to pursue criminal forfeiture against Lick. In fact, the Qui Tam Complaint [3] was filed before Lick was even indicted, as the Qui Tam Complaint [3] was filed on October 20, 2020 and Lick was indicted on May 7, 2021.

Considering this important distinction, the Court finds *Sharma* does *not* foreclose Rushing from utilizing the alternate remedy provision to obtain a portion of the criminal forfeiture recovery. In *Sharma*, the Fifth Circuit's decision clearly appears to be based on the use of the word "alternate" in the statute and, thus, the need for there to be two potential avenues for the Government to take. That concern is inapplicable here since Rushing's qui tam suit was pending prior to the Government's prosecution of Lick. In other words, the Government had the option to proceed only in the qui tam action but instead chose to pursue a criminal prosecution and criminal forfeiture and restitution. In fact, Judge Dennis' concurring opinion indicates, in this Court's view, that he believes a relator would be entitled to share in the recovery under the facts presently before the Court: "Had Babalola and Adetunmbi first filed their qui tam suit before providing their information to the government, then they would have been entitled, under § 3730(d)(1), to an award of between fifteen to thirty percent of the government's proceeds." *Sharma*, 746 F.3d at 166 (Dennis, J., concurring). The factual scenario articulated by Judge Dennis is synonymous with the one this Court now faces.

6

The District Court for the Southern District of Indiana has previously addressed this issue. *United States v. Bisig*, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005). There, Peggy and Philip Bisig owned and operated Home Pharm, a Kentucky corporation registered with the State of Indiana to supply Indiana Medicaid recipients with in-home pharmaceutical products. *Id*. at *1. FDSI was a private company "engaged in the detection and prosecution of fraudulent billing practices and other types of Medicaid fraud. The State of Indiana [] retained FDSI as a Special Consultant to the Indiana Attorney General[.]" *Id*.

FDSI investigated Home Pharm, discovered extensive fraud, and filed a qui tam suit against the entity pursuant to the False Claims Act. *Id*. Subsequent to FDSI's filing of a qui tam action, the Government began investigating Home Pharm and Peggy Bisig. *Id*. Eventually, the Government filed an action under the Fraud Injunction Statute (18 U.S.C. § 1345) to enjoin the ongoing fraud and freeze certain assets. *Id*. Later, the Government obtained an indictment against Home Pharm and Peggy Bisig. *Id*.[2] Bisig ultimately pled guilty and agreed to forfeit various pieces of real and personal property, as well as the assets of Home Pharm. *Id*. at *2. The Government seized approximately $265,000 in the injunctive action and recovered approximately $916,000 in property forfeited via the criminal prosecution. *Id*. FDSI filed a motion to intervene in the criminal action and the injunctive action, seeking to share in the distribution of the proceeds pursuant to the FCA's alternate remedy provision. *Id*.

The Government opposed FDSI's request to share in the recovery, arguing that it was not permitted under the statute. *Id*. The district court described the Government's position as follows:

> The United States' proposed interpretation of "alternate remedy" would enable the United States to stay the qui tam suit, prosecute the Defendant, and recover the Defendant's assets through criminal forfeiture without having to share that recovery with the relator, who

---

[2] Philip Bisig was apparently not indicted; however, his assets were frozen as part of the criminal prosecution.

> was first to uncover the fraudulent activities and report them to the United States. The advantages that this interpretation would grant the United States is clear: it would not be forced to share its recovery with relators. As a result, the United States would carry the incentive in most cases to stay the qui tam action and seek recovery through the criminal prosecution and forfeiture proceedings.

*Id*. at *4.

The district court noted, though, that the Government's position, if accepted, "would contradict the FCA's purpose." *Id*. The court therefore rejected the Government's argument and instead held that "the FCA ought to be interpreted in a manner that will maintain the incentive underlying the qui tam aspect of the FCA." *Id*. Providing further rationale, the district court explained:

> Thus, the court holds in this case that because the United States has achieved a monetary recovery from the Defendant in a manner outside of the qui tam action, and that recovery made an actual monetary recovery by the relator in the qui tam action either impossible or futile, the United States, in effect, elected to pursue its claim through an alternate remedy under § 3730(c)(5). This interpretation is especially appropriate in this particular situation in which the United States caused the stay of the qui tam action in order to pursue criminal prosecution against the Defendant and recover substantially all the Defendant's assets through forfeiture proceedings. Simply stated, the United States cannot sidestep the requirement to share recovery with the relator, who contends that it first discovered the fraud and informed the United States regarding the fraud, by merely electing to recover through criminal forfeiture proceedings.

*Id*.

This Court finds *Bisig* persuasive. As was the case there, the relator here apparently played an integral role in the criminal prosecution. In fact, the Qui Tam Complaint [3] went so far as to identify specific assets that Lick had purchased with the fraudulently obtained funds. Additionally, the Court finds it noteworthy that the Government sought numerous extensions of its deadline to intervene in this case, all the while it was prosecuting Lick and obtaining financial recovery via

8

the criminal prosecution. Rushing did not oppose those requested extensions while the Government was engaging in its evaluation of the allegations in her Complaint [3]. To now preclude her from recovery would, in this Court's view, be inequitable and directly contradict the purpose of the statutory scheme. The Court will not perpetuate such a harsh result.

Having determined that Rushing should be permitted to recover, the Court reverts to the language of Section 3730(c)(5), which provides that "if any such alternate remedy is pursued in another proceeding, the person initiating the action shall have *the same right in such proceeding as such person would have had if the action had continued under this section*." 31 U.S.C. 3730(c)(5) (emphasis added). Applying this language to the case *sub judice*, Rushing is entitled to "receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1).

The agreement between Rushing and the Government does just that—agreeing that Rushing receive 15% of "all monies collected from the default judgment plus applicable accrued interest[.]" [38], Ex. 1 at p. 1. The Court finds the agreement to be in accordance with the statutory language.

While reaching the conclusion that Rushing ought to be—and will be—able to recover, the Court is aware that there are contrary arguments. For instance, in *Bisig*, the Government argued that because the alternate remedy provision bestows on the relator "the same rights in [the alternate remedy] proceeding as such person would have had if the qui tam action had continued," applying the alternate remedy provision under the circumstances of that case would "then allow a relator to have the right to participate as a prosecuting party in a criminal case against the defendant, a result that is clearly not intended by Congress." *Bisig*, 2005 WL 3532554 at *6. The district court agreed

9

that such a result was not desirable but noted that the "alternate proceeding is not the entire criminal prosecution, but only the criminal forfeiture proceedings. Thus, the relator's right to participate as a party in the alternate proceeding only extends to the forfeiture proceeding, not to the entire criminal prosecution." *Id*. In addition, the court noted that Section 3730(c)(2)(D) "grants the court with the discretion to limit the relator's rights in the alternate litigation." *Id*.

Here, Rushing has not sought to intervene in the criminal prosecution or in the criminal forfeiture proceedings in any way. Rather, the parties have entered into an agreement pursuant to which the Government will pay Rushing a portion of the net proceeds of the criminal forfeiture recovery. This arrangement appears, in this Court's view, to alleviate the above-referenced concerns articulated by the Government in *Bisig*.[3]

Ultimately, the Court agrees with the parties' contention that Rushing should be permitted to share in the proceeds obtained via criminal forfeiture and restitution. To hold otherwise would, in this Court's view, run afoul of the underlying purpose of the qui tam provision in the False Claims Act. As articulated by the Sixth Circuit, when Congress amended the False Claims Act in 1986, it made clear its "overall intent in amending § 3730 was to encourage private enforcement suits. It emphasized its belief that in the face of sophisticated and widespread fraud only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds." *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 648 (6th Cir. 2003) (internal citations and quotation marks omitted). Reaching a different result in this

---

[3] The Court also notes that the District Court for New Jersey reached a different result in *United States v. Kurlander*, 24 F. Supp. 3d 417 (D. N.J. 2014). Although the Court sees no need to delve into all underlying facts in that case, it is noteworthy that, unlike the case at bar, the Government did not elect to intervene in the qui tam action but, instead, the relator sought intervention in the criminal prosecution. *Id*. at 418-20. Of course, even if directly on point, the case would not be binding on this Court.

case would not achieve that purpose and would serve only to dissuade potential relators from coming forward with allegations of fraud.

The Court finds it appropriate to authorize Rushing to share a portion of the proceeds from the criminal forfeiture and restitution award.

*Conclusion*

For the reasons set forth above, the pending Motion [38] is GRANTED. As requested by the parties, it is hereby ORDERED that the United States Marshals Service shall transfer 15% of the net proceeds of the forfeiture to Melissa Rushing. The Court notes that the parties' agreement includes a specific procedure for the payment to be made, and the parties shall comply with their agreed-upon arrangement. The parties shall communicate with the United States Marshals Service as to the logistics of the transfer. This Order shall extend to the proceeds realized from the sale of the 982 South Ridge Road, Starkville, Mississippi property made part of the criminal forfeiture order.

Additionally, the Court notes that the Government has only obtained Default Judgments [33, 34] against Lick; GTR Holdings, LLC; and Aspen Lake Online LLC. Although the other two Defendants, Aspen River Candle Company, LLC and Grassroots a Natural Company LLC, are currently in default, no efforts have been made to obtain a default judgment against them. The Government shall, within fourteen (14) days of today's date, move for default judgment against those Defendants or file a Notice on the docket indicating that it does not intend to pursue relief against those Defendants. Should the Government fail to do so, the Court will dismiss the claims against those Defendants without further notice for failure to prosecute.

SO ORDERED, this the 16th day of January, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE